# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3648 | **DATE** | 5/6/2002 |
| **CASE TITLE** | David Burrow vs. Northeast IL Regional Commuter RR Corp., d/b/a Metra/Metropolitan Rail | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Metra's motion to disqualify Hoey Farina & Downes from its representation of the Plaintiff in this case [44-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 07 2002 | |
| | Notified counsel by telephone. | | date docketed | 81 |
| | Docketing to mail notices. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 02 MAY -6 PM 3:56 | 5/6/2002 date mailed notice | |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | DK mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID BURROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 3648 |
| v. ) | |
| ) | Magistrate Judge Morton Denlow |
| NORTHEAST ILLINOIS REGIONAL ) | |
| COMMUTER RAILROAD ) | |
| CORPORATION, d/b/a METRA/ ) | |
| METROPOLITAN RAIL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Burrow ("Plaintiff") filed suit against his employer, Metra, for personal injuries sustained on the job. The case is set for trial on July 15, 2002. Metra now moves to disqualify Plaintiff's counsel, Hoey Farina & Downes ("Hoey firm") because they recently filed a separate personal injury action against Metra in state court on behalf of Ellen K. Emery ("Emery"), a former Metra in-house attorney. While at Metra, Emery supervised the defense of Plaintiff's case. Metra contends disqualification is required because an irrebuttable presumption exists that Emery will divulge confidences regarding Plaintiff's case to the Hoey firm. The Court disagrees and denies Metra's motion to disqualify Plaintiff's counsel.

# I. BACKGROUND FACTS

On June 16, 2000, Plaintiff filed this action against Metra for physical injuries sustained on March 11, 1998, in the course of his employment as a Metra sheet metal worker. He seeks damages under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et. seq.* (hereinafter "FELA"). Plaintiff is represented by the Hoey firm. Attorney George T. Brugess is principally responsible for prosecuting the case, although other members of the firm, including James L. Farina, entered their appearance on Plaintiff's behalf. The case is set for trial on July 15, 2002.

Until January 23, 2002, Emery was the Metra in-house attorney responsible for supervising the defense of Plaintiff's case. The defense is being conducted by Daniel J. Mohan of the law firm of Daley & Mohan, P.C. In her position as Associate General Counsel of Litigation, Emery supervised the defense of a number of FELA cases brought by the Hoey firm against Metra. As of March 15, 2002, there were 23 FELA cases brought by the Hoey firm against Metra pending in state and federal court. (Noland Aff. ¶ 2; Metra Mot. Ex. A).

On July 1, 1999, Emery tripped over a set of electrical sockets in the Metra office and injured her knee. (Emery Aff. ¶ 4). She was unable to settle her claim with the Metra claims department. (Emery Aff. ¶ 2). Emery's injuries are factually unrelated to Plaintiff's claims.

In mid-December, 2001, Emery met with James L. Farina of the Hoey firm to discuss whether he would represent her in her FELA claim against Metra. They reviewed the ethical

2

issues and agreed Emery would strictly comply with her ethical obligation not to "reveal, divulge or disclose to Farina or [the Hoey firm] any confidences or secrets of Metra." (Emery Aff. ¶ 14; Farina Aff. ¶ 3). No disclosures have been made to any member of the Hoey firm regarding any confidences or secrets of Metra. (Emery Aff. ¶¶ 15 and 20; Farina Aff. ¶ 4; and affidavits of 10 attorneys at Hoey firm attached as Group Ex. G to Plaintiff's Response). Nor has the Hoey firm ever offered Emery a job. (Farina Aff. ¶ 5).

Farina analyzed the Rules of Professional Conduct to determine what procedures to follow to fully comply with the applicable ethics rules. (Farina Aff. ¶ 9). Farina determined that Emery's claim was not adverse to any of their other Metra employee clients. Emery's claim is factually dissimilar to their other Metra cases. (Farina Aff. ¶ 17).

On or about December 28, 2001, Farina telephoned Michael Noland ("Noland"), Metra's General Counsel, to inform him of the Hoey firm's retention by Emery to pursue a FELA action against Metra. On January 15, 2002, Metra was served with a summons and complaint in the suit brought by the Hoey firm on behalf of Emery in the Circuit Court of Cook County, Illinois as Case No. 01 L 16358. (Noland Aff. ¶ 3; Metra Motion Ex. B).

On January 23, 2002, Noland removed Emery from any contact with all FELA cases brought by the Hoey firm. (Noland Aff. ¶ 4). On March 4, 2002, Emery was fired by Metra. She retained different counsel to pursue her employment and defamation claims against Metra. (Emery Aff. ¶ 16). She is currently unemployed. (Emery Aff. ¶ 17).

On March 15, 2002, Metra filed its motion to disqualify the Hoey firm. Oral argument was held on April 22, 2002.

## II. ISSUES PRESENTED

Metra's motion to disqualify the Hoey firm from representing Plaintiff presents the following issues:

1) What standards apply;

2) Whether an irrebuttable presumption requires the Hoey firm to be disqualified; and

3) Whether the Hoey firm should be disqualified from representing Plaintiff for any other reason.

## III. GOVERNING STANDARDS

The United States District Court for the Northern District of Illinois adopted, renumbered, and amended local rules effective September 1, 1999 pursuant to the Court's General Order of September 1, 1999. The most current version contains amendments through April 1, 2002. LR83.50.1 through LR83.58.9 are the Rules of Professional Conduct for the Northern District of Illinois. These rules are patterned after the comparable ABA Model Rules of Professional Conduct adopted by the ABA in 1983. The local rules are of the form LR83.5x.x where the x.x part of the local rule number is the same as the comparable ABA Model Rule. LR83.50.1. These local rules govern to the extent they differ from the rules governing Illinois lawyers appearing in Illinois state courts. LR83.58.5 (Committee

Comment). In considering this motion, the Court looks to both the Northern District of Illinois Local Rules and Seventh Circuit precedent addressing the issue of attorney disqualification. *Senese v. Chicago Area I.B. of T. Pension Fund*, 1997 WL 766867 (N.D.Ill. 1997).

## IV. RELEVANT LOCAL RULES OF PROFESSIONAL CONDUCT

Local Rules 83.51.6, 83.51.7, 83.51.9, 83.51.10 and 83.51.16 are most applicable to this unusual situation. Local Rule 83.51.6 addresses confidentiality of information and sets forth the following general rule:

> (a) Except when required under section (b) or permitted under section(c), a lawyer shall not, during or after termination of the professional relationship with the client, use or reveal a confidence or secret of the client known to the lawyer unless the client consents after consultation.

This rule prohibits Emery from sharing Metra client confidences with any member of the Hoey firm. Emery is aware of this obligation and she has "never divulged to Farina at Hoey, Farina & Downes any confidences or secrets of Metra (including but not limited to information about Metra's litigation and trial strategies, case reserves, and settlement policies and practices)." (Emery Aff. ¶ 12).

Local Rule 83.51.7 governs conflict of interest situations as follows:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

5

>   (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
>   (2) each client consents after disclosure.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
>   (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
>   (2) the client consents after disclosure.
>
> (c) When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved.

From the perspective of the Hoey firm, their representation of Emery is neither "adverse" nor "directly adverse" to Plaintiff's interests under subparagraph (a). The prosecution of Emery's FELA action is not adverse to the prosecution of Plaintiff's action. From the perspective of Emery, she does not represent Plaintiff and therefore, subparagraph (a) does not address her situation.

The more probative analysis involves subparagraph (b). On April 19, 1997, the American Bar Association Ethics Committee issued Formal Ethics Opinion 97-406 entitled: "Lawyer as Lawyer For or Client of Another Lawyer." ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 97-406 (1997). This ABA opinion addresses the ethical issues

that arise "when one lawyer has formed or proposes to form a lawyer-client relationship with another lawyer, at a time when the two lawyers represent clients whose interests are adverse." *Id.* In analyzing this situation under ABA Model Rule 1.7(b) which is identical to Local Rule 83.51.7(b), the ABA Committee "concludes the lawyers cannot simultaneously have a lawyer-client relationship and represent third party clients whose interests are adverse if a reasonable lawyer would conclude his relationship as lawyer for or client of opposing counsel may materially limit and would adversely affect the lawyer's representation of his 'third-party' client." *Id.*

The ABA Ethics Committee suggests a variety of considerations are relevant in deciding whether the relationship between the Hoey firm and Emery may materially limit their representation including (1) the relative importance of the matter to the represented lawyer; (2) the relative size of the fee expected by the representing lawyer; (3) the relative importance to each lawyer and to his client, of the matter involving the 'third-party' client; (4) the sensitivity of each matter; (5) the substantial similarity between the subject matter or issues of the two representations; and (6) the nature of the relationship of one lawyer to the other and of each lawyer to his third-party client. *Id.*

Does the relationship between the Hoey firm and Emery cause either of them to temper advocacy on behalf of their clients? Under the circumstances presented here, the Court sees no reason why the Hoey firm would in any way temper its advocacy on behalf of Plaintiff or otherwise be limited in prosecuting Plaintiff's case. Emery is no longer a Metra

employee. She no longer represents Metra against the Hoey firm.[1] She is unable to influence any decisions regarding Plaintiff's case, and she is duty bound to preserve Metra's confidences. So long as the Hoey firm and Emery live up to their ethical obligations, Metra's interests in the defense of Plaintiff's case are protected. This Court sees no reason to assume the Hoey firm and Emery will not abide by their ethical obligations to protect Metra's confidence regarding Plaintiff's case which is totally unrelated to Emery's case.

Local Rule 83.51.9 addresses conflicts of interest involving former clients and requires Emery to maintain Metra's confidences and not to disclose information she has regarding Plaintiff's case to the Hoey firm. LR83.51.9(c).

Local Rule 83.51.10 addresses imputed disqualifications and provides a safe harbor by which attorneys can switch law firms and be effectively screened so as to prevent disqualifications. This rule may have some applicability by analogy as discussed in section V, *infra*.

Local Rule 83.51.16(2) requires a lawyer to withdraw from a case if "the lawyer knows or reasonably should know that such continued employment will result in violation of these rules." The Hoey firm is under a continuing obligation to insure compliance with its ethical obligation and if circumstances change, they are expected to act appropriately.

## V. SEVENTH CIRCUIT STANDARDS

The Seventh Circuit uses a three-step analysis for attorney disqualification motions.

---

[1] The Court recognizes the situation might be different if Emery was still a Metra employee responsible for supervising Hoey firm FELA cases. In light of her termination, the Court addresses the situation as it finds it.

8

> First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make the disqualification proper.

*Cromley v. Board of Education of Lockport Township H.S. Dist. 205*, 17 F.3d 1059, 1064 (7th Cir. 1994); *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983). Courts must balance two important considerations in addressing disqualification motions: the sacrosanct privacy of the attorney-client relationship and the right of a party to proceed with counsel of its choice. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). The Seventh Circuit has therefore adopted an approach which creates a rebuttable presumption once it has been determined that a "substantial relationship" exists between a subject matter of the prior and present representations. Disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Id.*

The issue presented is somewhat unusual because it does not involve a lawyer switching law firms. Rather, it involves a lawyer becoming a plaintiff against her employer and client. *Cromley* raises the typical motion to disqualify scenario, where an attorney representing a plaintiff for several years decides to join the law firm defending the same action. 17 F.3d 1059. Plaintiff moves to disqualify the defense firm. The court then proceeds with the three-part rebuttable presumption test.

Although Metra urges this Court to apply the three-part test in its motion, it shifts gears in the reply brief and asks this Court to disqualify Plaintiff's counsel based upon an irrebuttable presumption that Emery will share confidences concerning Plaintiff's case with the Hoey firm. Metra relies upon *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 197 (7th Cir. 1979) and *Schloetter v. Railoc v. Indiana*, 546 F.2d 706, 710 (7th Cir. 1976) for the proposition that the presumption is irrebuttable. Such is not the case where the matters are not substantially related. *Novo*, 607 F.2d at 197. Furthermore, the Novo court recognized that "a rote reliance on irrebuttable presumptions may deny the courts the flexibility needed to reach a just and sensible ruling on ethical matters." *Id.*

As the Seventh Circuit later made clear in *Freeman*, "In *Novo*, we recognized that the presumption that an attorney has knowledge of the confidences and secrets of his firm's clients is rebuttable." 689 F.2d at 722. The presumption of shared confidences has been found to be irrebuttable only when an entire law firm changes sides and not when one attorney changes sides. *Cromley*, 17 F.3d at 1066, *citing Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983). Although the facts presented in the present case are unusual, the Court believes the Seventh Circuit's three-part test can be adapted to address the two important policy concerns which are implicated: the preservation of client confidences and the right to choose an attorney of one's choice.

A.  SUBSTANTIAL RELATIONSHIP TEST

The first question to be addressed is whether a substantial relationship exists between the subject matter of the prior and present representation. *Id.* at 1064. The answer is a clear no and yes. From the perspective of the Hoey firm, the personal injury actions being prosecuted on behalf of Plaintiff and Emery are not in any way related. Because the subject matter of Plaintiff's representation is not substantially related to the Hoey firms representation of Emery, no ethical problem exists. *Freeman*, 689 F.2d at 722.

However, because of Emery's role as in-house counsel responsible for the defense of Plaintiff's action, the Court will treat her in a fashion similar to an attorney joining the Hoey firm, while recognizing that she will not have the day to day physical access to files and other opportunities for communications. The Court recognizes that because of her role as in-house counsel, it is reasonable to infer Emery does have Metra confidential information relevant to the issues in Plaintiff's case. This takes us to the next step of the inquiry to determine whether the presumption of shared confidences has been rebutted. *Cromley*, 17 F.3d at 1064.

B.  PRESUMPTION OF SHARED CONFIDENCES

The Court finds that the presumption of shared confidences has been rebutted based on the affidavits filed by Emery, Farina, and the other members of the Hoey firm. First, they researched their ethical obligations. Second, they agreed with Emery that she would not under any circumstance reveal, divulge or disclose any confidences or secrets of Metra. Third, they filed affidavits by all counsel in the firm to verify their conduct. Fourth, they notified Metra's General Counsel of their intention to represent Emery. Finally, they filed

11

suit for Emery on her claims and have obtained no information from her regarding Plaintiff's claim. *See Cromley*, 17 F.3d at 1065.

The Hoey firm is no stranger to railroad disqualification motions. *See, Miller v. Chicago and North Western Transportation Co.*, 938 F.Supp. 503 (N.D. Ill. 1996)(holding Hoey firm rebutted presumption of shared confidences after hiring former railroad in-house counsel as an associate to its firm). Judge Shadur described the Hoey firm's procedures to be "exemplary." *Id.* at 504.

Because Emery is a client and not a member of the Hoey firm, there was no need to implement certain of the steps necessary when hiring an attorney. For example, in *Miller*, the Hoey firm locked files in a partner's cabinet to prevent access by the associate. 938 F.Supp. at 506. As a client, Emery does not have access to Hoey firm files. In *Miller*, the Hoey firm provided that the associate would not share in any fees generated from FELA suits against his former boss. *Id* at 507. As a client, Emery cannot share in Plaintiff's recovery of any other case being handled by the Hoey firm against Metra, except her own.

## C.  PLAINTIFF'S INTEREST MUST ALSO BE CONSIDERED

Plaintiff's case is set for trial on July 15, 2002. The Hoey firm has represented him throughout the proceedings. The Hoey firm has not received any confidential Metra information from Emery regarding Plaintiff's case. The Court sees no reason why Plaintiff should not be allowed to have his attorney represent him at trial.

## VI. THE IN-HOUSE COUNSEL CASES ARE DISTINGUISHABLE ON THEIR FACTS

The parties cite several cases involving attorney disqualification motions where an

attorney seeks personal legal representation from an adversary. In *Fox Searchlight Pictures, Inc. v. Paladino,* 106 Cal. Rptr. 2d 906, 915 (Cal.Ct.App. 2001), the court affirmed the trial court's order denying a motion to disqualify counsel representing a former in-house counsel ("Paladino") against her former employer ("Fox"). The court analyzed the question to determine whether Paladino's counsel, who had previously represented Fox on intellectual property issues had any involvement on behalf of Fox in any matter related to the current litigation, an action for wrongful termination. *Id.* at 913-915. The court found the former representation was not substantially related to the current representation and relied upon *General Dynamics Corp. v. Superior Court,* 32 Cal. Rptr. 2d 1 (Cal. 1994), for the proposition that a former in-house counsel may sue her employer for wrongful termination so long as she does not publicly disclose information the employer is entitled to keep secret. *Id.* at 915. The *General Dynamics* court noted three ways to avoid unwarranted disclosure of privileged information. First, in-house counsel, like all attorneys, are bound by the ethical rule against disclosure of client confidences. *Id.* at 18. Second, judges can take an aggressive managerial role to minimize the dangers the legitimate privilege interests the trial of such cases may present. *Id.* Finally, if the elements of plaintiff's case cannot be fully established without breaching the attorney-client privilege, the suit must be dismissed in the interest of preserving the privilege. *Id.* Because the presentation of Plaintiff's personal injury action does not require the revelation of any attorney-client privileged information, this Court believes reliance upon Emery's duty not to disclose client confidences is sufficient to protect Metra in the defense of Plaintiff's case.

13

In *Balla v. Gambro, Inc.*, 584 N.E.2d 104 (Ill. 1991), the Illinois Supreme Court held a former in-house counsel did not have a cause of action against his former employer for retaliatory discharge because of the attorney-client relationship with his former employer and the right of a client to discharge his attorney at any time. Granting such a cause of action may create a chilling effect on the communications between the employer/client and the in-house counsel. These issues are not involved in the present case, but may arise in the event Emery brings her own wrongful discharge action. That issue is left for another day and another court.

In *Hull v. Celanese Corporation*, 513 F.2d 568 (2nd Cir. 1975), the Second Circuit affirmed the disqualification of a law firm where, during the course of a lawsuit, it sought to represent an intervening plaintiff who had been active in the defense of the same lawsuit. This case is also distinguishable because it was decided under the Code of Professional Responsibility which used an "appearance of professional impropriety standard" and because the matter at issue was not merely "substantially related" to the previous representation, it is exactly the same litigation. *Id.* at 571. The parties agree that the ethical rules have been modified to eliminate Canon nine's "appearance of impropriety" standard.[2]

---

[2] In August 1983, the ABA replaced the entire ABA Model Code of Professional Responsibility with the Model Rules of Professional Conduct. ABA/BNA Lawyers' Manual on Professional Conduct 01:301(Kirk A. Swanson ed., 2001).

## VII. CONCLUSION

Metra's motion raises legitimate concerns regarding the protection of its attorney-client information relating to Plaintiff's FELA action. The Hoey firm and Emery answered these concerns under oath. No Metra client confidences regarding Plaintiff's case have been revealed by Emery, Emery is no longer a Metra employee, and Plaintiff's case is not factually connected to Emery's lawsuit. The Hoey firm and Emery must continue to comply with their ethical obligations. No reason exists why Plaintiff should not be allowed to go to trial with his attorney of choice. Accordingly, **Metra's motion to disqualify Hoey Farina & Downes is denied.**

**SO ORDERED THIS 6th DAY OF MAY, 2002.**

*Morton Denlow*

**MORTON DENLOW**
**United States Magistrate Judge**

**Copies Mailed or Delivered in Open Court To:**

| | |
|---|---|
| James L. Farina<br>Steven P. Garmisa<br>George T. Brugess<br>HOEY FARINA & DOWNES<br>542 South Dearborn, Suite 200<br>Chicago, IL 60605<br><br>**Counsel for Plaintiff** | Daniel J. Mohan<br>Christopher R. Karsten<br>DALEY & MOHAN, P.C.<br>150 North Wacker Drive<br>Suite 1550<br>Chicago, IL 60606<br><br>Richard Capra<br>METRA<br>547 West Jackson Boulevard<br>15th Floor<br>Chicago, IL 60661<br><br>Michael M. Conway<br>Melissa C. Brown<br>FOLEY & LARDNER<br>Three First National Plaza<br>70 West Madison St., Suite 4100<br>Chicago, IL 60602<br>**Counsel for Defendant** |